UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NICOLE MAINELLA,

    Plaintiff,

v.                                                     Case No. 8:18-cv-2032-T-AEP

ANDREW M. SAUL,
Commissioner of Social Security,[1]

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.    Procedural Background**

Plaintiff filed an application for a period of disability and DIB (Tr. 161). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 69-96). Plaintiff then requested an administrative hearing (Tr. 98). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 748-776). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 10-22). Subsequently, Plaintiff requested review from the

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

Appeals Council, which the Appeals Council denied (Tr. 1). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1975, claimed disability beginning October 7, 2014 (Tr. 12). Plaintiff obtained a high school education (Tr. 21). Plaintiff's past relevant work experience included work as an insurance agent and credit clerk. *Id.* Plaintiff alleged disability due to arthritis, fibromyalgia, chronic fatigue syndrome, depression, anxiety, panic attack, and headaches (Tr. 60).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2019 and had not engaged in substantial gainful activity since October 7, 2014, the alleged onset date (Tr. 12). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: lumbar spine multilevel disc bulges, cervical spine degenerative changes, major depressive disorder, and unspecified anxiety disorder. *Id.* Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work, except she can perform no more than occasional climbing, balancing, stopping, kneeling, crouching, and crawling; and occasional climbing of vertical ladders, but never climbing of scaffolds, ropes, or at open unprotected heights; must avoid extreme industrial vibrations and operation of dangerous machinery; limited to understanding and carrying out simple, routine, repetitive tasks with the ability to make basic decisions and adjust to simple changes in the work setting; can attend and

concentrate on these simple routine repetitive tasks for two hour segments, after which she will need a break of 10 to 15 minutes; and her interaction with the public, co-workers, and supervisors should be limited to occasional as long as involving simple, routine, repetitive procedures and tasks (Tr. 15). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 16).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 20). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as an advertising materials distributor, small products assembler II, and bench assembler (Tr. 21). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 22).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### III.

The Plaintiff argues that the ALJ erred in two ways: (1) by failing to find that Plaintiff's fibromyalgia[2] was a severe impairment; and (2) by improperly evaluating Dr. Muhammad Mughni's opinion[3]. For the reasons that follow, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

### A. Severe Impairments

As an initial matter, the Plaintiff contends that the ALJ failed in finding Plaintiff's fibromyalgia as severe. Notably, step two of the sequential evaluation process operates as a threshold inquiry. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *see Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013) (*per curiam*). At step two of the sequential evaluation process, a claimant must show that he or she suffers from an impairment or combination of impairments that significantly limits his or her physical or mental ability to

---

[2] Fibromyalgia is a "complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p.

[3] For ease of reference in its analysis, the Court re-ordered Plaintiff's arguments according to the sequential evaluation process.

do basic work activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521. A claimant need show only that his or her impairment is not so slight and its effect is not so minimal that it would clearly not be expected to interfere with his or her ability to work. *McDaniel*, 800 F.2d at 1031. "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). In other words, an impairment or combination of impairments is not considered severe where it does not significantly limit the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1521(a); *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 948 (11th Cir. 2006) (*per curiam*).

Notably, however, the finding of any severe impairment, whether or not it results from a single severe impairment or a combination or impairments that together qualify as severe, is enough to satisfy step two. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *see Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013) (*per curiam*) ("[T]he ALJ determined at step two that at least one severe impairment existed; the threshold inquiry at step two therefore was satisfied); *see Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010) (*per curiam*) (noting that an ALJ's failure to identify an impairment as severe, where the ALJ found that the plaintiff suffered from at least one severe impairment, constituted harmless error and was, in fact, sufficient to meet the requirements of step two, and additionally noting that nothing requires the ALJ to identify, at step two, all of the impairments that could be considered severe).

SSR 12-2p specifically sets forth the evidence and criteria that an ALJ must consider when determining whether a claimant has a medically determinable impairment of fibromyalgia. Pursuant to SSR 12-2p, for an ALJ to find that a claimant has a medically

determinable impairment of fibromyalgia, the claimant must either meet all the criteria set forth in the 1990 ACR Criteria for the Classification of Fibromyalgia *or* the 2010 ACR Preliminary Diagnostic Criteria. Thus, fibromyalgia can be considered a medically determinable impairment if the plaintiff meets *all* of the following: (1) a history of widespread pain; (2) at least 11 positive tender points on physical examination; and finally, (3) evidence that other disorders that could cause the symptoms or signs were excluded, such as lab tests for complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor[4]. SSR 12-2p. In the alternative, fibromyalgia can be considered a medically determinable impairment if the plaintiff meets *all* of the following: (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions (including manifestations of fatigue, cognitive, or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome); and finally, (3) evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded[5]. *Id.*

Here, the ALJ properly determined that the Plaintiff did not satisfy either criteria under SSR 12-2p. The ALJ initially noted that Dr. Muhammad Mughni diagnosed the Plaintiff with fibromyalgia (Tr. 13). But, a mere diagnosis of fibromyalgia fails "to reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005). To that effect, the ALJ noted that Dr. Mughni's treatment notes are inconsistent with the diagnosis as they display no muscle weakness or tenderness in her spine, intact sensation, normal coordination, normal gait, normal range of motion, and negative trigger

---

[4] This constitutes the 1990 ACR Criteria for the Classification of Fibromyalgia.
[5] This constitutes the 2010 ACR Preliminary Diagnostic Criteria.

points (Tr. 13, 16-19). Dr. Mughni repeatedly found Plaintiff had negative trigger points on examination and the Plaintiff failed to demonstrate repeated manifestations of six or more fibromyalgia symptoms (Tr. 13, 313, 518, 524, 527, 529, 537, 607). Further, Dr. Mughni's physical examinations, along with other primary care provider examinations, consistently showed normal ambulation and a healthy appearance (Tr. 17). Notably, Plaintiff's objective examinations revealed the following: no muscle pain and normal sensation; no indication of irritable bowel syndrome; and alertness (as shown by the lack of fatigue, limitations in thinking or remembering, headaches, abdominal cramps, and ringing in the ears) (Tr. 303, 305, 307, 311, 312-13, 335, 357, 361, 461-62, 517-18, 520-21, 526-27, 530-31, 606-07, 710). In fact, Plaintiff's most recent examination, dated in February of 2017, revealed she was in "good general health," with no fatigue, psychiatric symptoms, musculoskeletal symptoms, headaches, joint point, or muscle pain (Tr. 17, 613-14). Further, the ALJ noted the Plaintiff's daily activities and appearance during the administrative hearing were inconsistent with the diagnosis. For example, Plaintiff had fostered a toddler, cleaned out her shed, attended classes, travelled to Georgia, cooked and cleaned for Thanksgiving, and went camping for the weekend (Tr. 17, 19). Plaintiff drove herself without stopping to the administrative hearing and her posture and motor behavior were normal; she did not have an assistive device; and from a lay perspective, the Plaintiff walked out of the hearing with a normal gait and with no observed difficulty (Tr. 17).

Regardless, the ALJ determined that Plaintiff had the following severe impairments: lumbar spine multilevel disc bulges, cervical spine degenerative changes, major depressive disorder, and unspecified anxiety disorder (Tr. 12). Accordingly, since the ALJ determined that Plaintiff suffered from multiple severe impairments at step two, and then proceeded beyond step two in the sequential analysis, any error in failing to find that Plaintiff suffered from other

severe impairments is rendered harmless. *Gray*, 550 F. App'x at 853-54; *Packer*, 542 F. App'x at 892; *Heatly*, 382 F. App'x at 824-25. As such, the ALJ's finding that Plaintiff's fibromyalgia is not a medically determinable impairment is supported by substantial evidence.

**B.     RFC**

As a final matter, the Plaintiff contends that the ALJ failed to properly evaluate Dr. Muhammad Mughni's opinion when formulating the Plaintiff's RFC. At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all of the other evidence of record and will consider all of the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e), 416.920(e), 416.945(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or

symptoms; and any other factors concerning the claimant's functional limitations and restrictions. SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3), 416.929(c)(3)(i)-(vii), 416.945(a)(3).

"Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Further, "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8P, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). According to the ruling, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* at *5. Therefore, in denying disability benefits, the evidence must show that the claimant can perform work on a regular and continuing basis.

### a. Medical Opinions

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. §§ 404.1527, 416.927. In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Further, the more consistent the

medical opinion is with the record as a whole, the more weight that opinion will receive. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis*, 125 F.3d at 1440. Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. *MacGregor*, 786 F.2d at 1053. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (citation omitted). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*).

Statements by a medical source that a claimant is "disabled" or "unable to work" constitute opinions on issues reserved to the Commissioner and do not direct that a finding of disabled is warranted. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877-78 (11th Cir. 2013) (stating that it is the Commissioner, not a claimant's physician, who determines whether a claimant is statutorily disabled, and a statement by a medical source that a claimant is disabled does not mean that the Commissioner will conclude a claimant is disabled). The Commissioner need not afford any special significance to the source of such an opinion because the determination of disability and ability to work remain issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

**1. Dr. Muhammad Mughni**

The Plaintiff contends that the ALJ failed to properly evaluate Dr. Muhammad Mughni's opinion when formulating the Plaintiff's RFC. Specifically, the Plaintiff argues that Dr. Mughni's opinion that the Plaintiff should not work more than five hours per day, four days per week and that her experience of pain and other symptoms will be severe enough to constantly interfere with her attention and concentration needed to perform even simple work tasks establishes that Plaintiff is disabled (Tr. 370-71).

The Court finds Plaintiff's argument unavailing. As an initial matter, the ALJ properly noted that the issue of disability and inability to work is reserved for the Commissioner (Tr. 19). Importantly, though Dr. Mughni was a treating physician, the ALJ properly showed good cause for assigning little weight to his opinion. The ALJ noted that Dr. Mughni did not offer specific limitations and his opinion was inconsistent with the record as a whole, his own treatment notes, *and* the Plaintiff's daily activities (Tr. 17-19). In fact, the ALJ noted Dr. Mughni's unwillingness to opine as to Plaintiff's specific limitations, thus finding his opinions conclusory (Tr. 19, 371). To that effect, the ALJ discussed how Plaintiff's objective examinations, including Dr. Mughni's treatment records, failed to support those conclusory opinions as Plaintiff was healthy appearing and with no mental or physical abnormalities; and experienced no fatigue, psychiatric, or musculoskeletal symptoms (Tr. 613-14, 616-17). Notably, Dr. Mughni's examinations were normal revealing a normal gait, no muscle weakness, intact sensation, normal coordination, normal muscle tone and strength, normal range of motion in her spine and extremities, no spinal tenderness, and negative point triggers (Tr. 312-13, 517-18, 520-21, 523-24, 526-27, 528-29, 530-31, 606-07). Dr. Mughni himself recommended that Plaintiff perform regular aerobic exercise (Tr. 313, 527, 529). As such, the ALJ concluded that,

the mild objective examinations, when viewed in tandem with Dr. Mughni's own conservative treatment records, fail to support and were inconsistent with Dr. Mughni's conclusory opinions.

Further, Dr. Mughni's conclusory opinions were inconsistent with Plaintiff's plethora of reported daily activities. Plaintiff reported her typical day consisted of waking up early in the morning, helping her children get ready for school and feeding them, having coffee and breakfast, brushing her teeth, performing household chores, watching television and reading, making dinner, picking her children up, eating, watching television, and going to bed early (Tr. 241). Generally, the Plaintiff could prepare food, perform household chores, drive, shop, visit family, and go out to eat in restaurants (Tr. 241-44). The Plaintiff also did yoga and meditation upon securing a gym membership (Tr. 709-713). Further, she was able to assist her 8-year old daughter with homework and transport her to school and karate, along with recently taking in an 18-month old foster child (Tr. 241, 360). The Plaintiff further reported that she quit her job to attend school in order to become a teacher (Tr. 334, 360). As such, the ALJ properly showed good cause for giving little weight to Dr. Mughni's opinion. The ALJ's decision was thus based on substantial evidence and employed proper legal standards.

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 9th day of August, 2019.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record